# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAMAR PRATER and REBECCA PRATT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC., GOOGLE LLC, GOOGLE PAYMENT CORP., VGW HOLDINGS LTD., VGW MALTA LTD. d/b/a "CHUMBA CASINO", VGW LUCKYLAND INC. d/b/a "LUCKYLAND SLOTS", and VGW GP LTD. d/b/a "GLOBAL POKER",<br><br>Defendants. | No.<br><br>*Civil Action*<br><br>Hon.<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff LAMAR PRATER, of Schenectady, New York and REBECCA PRATT, of Falconer, New York bring this case on behalf of themselves and all others similarly situated against Defendants APPLE, INC., GOOGLE LLC, GOOGLE PAYMENT CORP. and VGW HOLDINGS LTD., including its subsidiaries VGW MALTA LTD., VGW LUCKYLAND INC., and VGW GP LTD., seeking to enjoin the Defendants' illegal online casino operation and to recover money lost to illegal gambling pursuant to N.Y. Gen. Oblig. Law § 5-421.

## INTRODUCTION

1.      This case is about patently illegal gambling software being distributed to the cell phones, desktop computers and other personal electronic devices of individuals throughout New York and beyond, by an unlawful enterprise that includes two of the most successful corporations in the world.

2.      Defendants VGW HOLDINGS LTD. and its subsidiaries, along with others

similarly situated (collectively, the "VGW Defendants" or "VGW"), are developers and operators of websites and digital software applications ("apps") that resemble the customary games of chance (blackjack, poker, roulette, etc.) typically found in traditional brick-and-mortar casinos.

3.     The VGW Defendants have engaged in a consistent, nearly identical pattern of fraud and misconduct. They entice individuals, such as the Plaintiff and other members of the proposed class, to their websites and apps by fraudulently representing that they provide free games of chance designed purely for fun and entertainment. Plaintiffs have discovered—*but only after each losing thousands of dollars—that the VGW Defendants' social casinos are in fact real casinos, where real money can be wagered and lost in exchange for the chance to win an arbitrary financial reward.*

4.     The VGW Defendants own and operate three websites using fanciful names to evoke casino enterprises: "Chumba Casino" (Defendant VGW MALTA), "LuckyLand Slots" (Defendant VGW LUCKYLAND), and "Global Poker" (Defendant VGW GP). These websites offer a multitude of digital slot machines, blackjack, poker, roulette and other forms of lottery wheel.

5.     The VGW Defendants misleadingly describe their websites as "social casinos" to promote the deception that they are free to play and for entertainment purposes only. In reality, the VGW Defendants throw a wild card into the deck: They simultaneously promote sweepstakes awards that effectively transform their supposedly free "social casinos" into an unauthorized and unlawful interstate gambling enterprise, in all but name.

6.     In addition to operating websites, VGW's games are also available through apps that can be downloaded from well-known software application platforms owned and operated by Defendants APPLE (the "App Store") and GOOGLE (the "Play Store") to any personal electronic

device running on either company's respective operating system.

7.     Players either sign up on the websites operated by VGW or download to their iOS and Android devices (*i.e.*, cell phones, tablets and other personal electronic devices) a corresponding app designed by the VGW Defendants from either the App Store or Play Store, respectively. After the player agrees to the terms and conditions—which include a plethora of hold harmless clauses and an ironclad arbitration agreement—the VGW Defendants sell to the player, in exchange for real money, virtual utility tokens that can be used to wager on the digital games of chance described at ¶ 4, *supra*.

8.     But the scheme does not end there. While the utility tokens sold by VGW have no value outside the platform itself, and are primarily used only to play their digital games of chance, the VGW Defendants simultaneously throw in a second class of virtual tokens that qualifies the user for sweepstakes prizes. These coins are ultimately redeemable for real value, like cash, gift cards, cryptocurrency (including Bitcoin), *etc.*

9.     In sum, the websites and apps owned and operated by the VGW Defendants allow users to purchase virtual coins, typically called "Gold Coins" or the like, that can be used to play in their digital casinos; and in return for playing, the VGW Defendants distribute a secondary class of virtual currency, typically called "Sweeps Coins" or the like, that offer users the prospect of an arbitrary financial windfall, just like a traditional brick-and-mortar casino.

10.     The VGW Defendants have succeeded in misleading regulators about the true nature of their operations for far too long. These Defendants are not licensed casinos. They are not regulated by any casino regulator as a traditional, licensed casino would be. No one is looking over anyone's shoulder to ensure that the digital dice aren't loaded. And the VGW Defendants have, thus far, managed to entirely insulate themselves from civil liability by hiding behind an iron

curtain of bizarre arbitration agreements, many of which require arbitration in far flung locales like Malta and elsewhere.

11.    Defendants APPLE, GOOGLE, and GOOGLE PAYMENT CORP. (collectively, the "App Defendants") willingly assist, promote and profit from this illegal scheme by, *inter alia*: (1) offering users access to the apps designed by the VGW Defendants through APPLE's App Store and GOOGLE's Play Store, thereby helping the VGW Defendants turn their customer's cell phones, iPads and tablets into illegal gambling devices, as that term is defined at N.Y. Penal Law § 225.00; (2) taking a substantial percentage of consumer purchases of Gold Coins, Sweeps Coins and other transactions within the apps distributed by the VGW Defendants through the App Store or Play Store, respectively; and (3) processing illicit transactions between consumers and the VGW Defendants using their proprietary payment systems, *viz.*, GOOGLE PAYMENT's "Google Pay"; and (4) by using search algorithms within GOOGLE's Chrome browser and APPLE's Safari browser to shepherd unwitting customers to the VGW Defendants' websites and apps, thereby facilitating the Defendants' unlawful gambling enterprise.

## PARTIES

12.    Plaintiff LAMAR PRATER is an adult resident citizen of New York, residing in Schenectady County. Plaintiff LAMAR PRATER has lost well over $1,000 to the Defendants' illegal online gambling enterprise.

13.    Plaintiff REBECCA PRATT is an adult resident citizen of New York, residing in Chautauqua County. Plaintiff REBECCA PRATT has lost well over $1,000 to the Defendants' illegal online gambling enterprise.

14.    Defendant APPLE, INC. (hereinafter, "APPLE") is a corporation organized and existing under the laws of California, with its principal place of business in Cupertino, California.

APPLE owns and operates the "App Store," a platform widely available to users of APPLE's iOS devices (e.g., iPhones and iPads) and others, through which they can download and obtain access to the illegal casino websites owned and operated by the VGW Defendants, thereby turning their phone or other device into an instrument used in the Defendants' illegal gambling scheme. APPLE maintains several offices and retail establishments in New York City and therefore has a continuous, ongoing physical presence in the venue of this District, and does business by registered agent throughout New York generally.

15.     Defendant GOOGLE LLC (hereinafter, "GOOGLE") is a corporation organized and existing under the laws of California, with its principal place of business in Mountain View, California. GOOGLE owns and operates the "Play Store", a platform widely available to users of GOOGLE's Android phones and others, through which they can download and obtain access to the illegal casino websites owned and operated by the VGW Defendants, thereby turning their phone or other device into an instrument used in the Defendants' illegal gambling scheme. GOOGLE maintains several offices in New York City and therefore has a continuous, ongoing physical presence in the venue of this District, and does business by registered agent throughout New York generally.

16.     Defendant GOOGLE PAYMENT CORP. is a Delaware corporation and licensed money transmitter with its principal place of business in Mountain View, California. GOOGLE PAYMENT is a subsidiary of Defendant GOOGLE and therefore owned by Alphabet, Inc. GOOGLE PAYMENT provides payment processing services to various websites and other digital businesses, primarily through a digital wallet and payment system known as "Google Pay" (a/k/a "GPay"). GOOGLE PAYMENT processes purchases made by customers who download the VGW Defendants' apps from GOOGLE's Play Store as well as in-app purchases made within the VGW

Defendants' apps and websites. Upon information and belief, GOOGLE PAYMENT collects commissions as high as 30% on purchases using Google Pay. GOOGLE PAYMENT does business by registered agent within the venue of this District and throughout New York generally.

17.     Defendant VGW HOLDINGS LTD. is an Australian company that fully controls the downstream operations of its subsidiary companies: VGW MALTA LTD., VGW LUCKYLAND INC., and VGW GP LTD.  VGW HOLDINGS operates an internet website (*available at* https://vgwplay.com) that directly links consumers to its subsidiary companies' unlawful online casino websites.  VGW HOLDINGS, along with its subsidiary companies, actively operates and markets internet gambling websites throughout New York and beyond, which websites and operations are unauthorized and illegal under state and federal law.

18.     VGW MALTA LTD. is a company formed in Malta that owns and operates an internet gambling website (*available at* https://www.chumbacasino.com), along with an app and YouTube channel, under the brand "Chumba Casino."  VGW MALTA maintains its offices in Australia, and conducts business within the venue of this District and throughout New York, which websites and operations are not permitted and are illegal under state and federal law.

19.     VGW LUCKYLAND is a Delaware corporation that owns and operates an internet gambling website (*available at* https://LuckyLandslots.com), along with an app and YouTube channel (@LuckyLand7395), under the brand "LuckyLand Slots." VGW LUCKYLAND maintains an office in San Francisco, California, and conducts business within the venue of this District and throughout New York generally, which websites and operations are not permitted and are illegal under state and federal law.

20.     VGW GP LTD. is a company formed in Malta that owns and operates an internet gambling website (*available at* https://globalpoker.com), along with an app, under the brand

"Global Poker." VGW GP conducts business within the venue of this District and throughout New York generally, which websites and operations are not permitted and are illegal under state and federal law.

21.    Collectively, Plaintiff identifies VGW HOLDINGS and its subsidiaries (VGW MALTA, VGW LUCKYLAND and VGW GP) acting in concert as the "VGW Defendants" or simply "VGW".

### JURISDICTION AND VENUE

22.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from any of the Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

23.    Federal subject-matter jurisdiction also exists under 28 U.S.C. § 1331 because Plaintiffs allege violations of 18 U.S.C. § 1962(c) and (d), the Racketeer Influenced and Corrupt Organizations Act ("RICO") of 1970.

24.    This Court has personal jurisdiction over the Defendants because each of the Defendants conducts significant business transactions in this District and throughout New York generally, and because the wrongful conduct alleged by the Plaintiffs occurred within and emanated from this District.

25.    Venue is proper in this federal district under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within the venue of this District, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### I.  The 'Sweepstakes Casino' Model

26.     The VGW Defendants actively promote and operate internet gambling websites and downloadable apps that target citizens of New York and elsewhere, thereby conducting business within the venue of this District and throughout New York generally.

27.     The VGW Defendants entice individuals like the Plaintiffs and proposed class members to play their websites and downloadable apps by issuing a bundle of virtual utility tokens, which they refer to as "Gold Coins", that can be used to play their digital games of chance ostensibly for fun and entertainment. After the customers inevitably lose their initial allotment of free Gold Coins, they are prompted to purchase more if they wish to continue playing the Defendants' games.

28.     As the user continues playing, the VGW Defendants also provide an allotment of sweepstakes tokens, which they refer to as "Sweeps Coins".  Players continue wagering on the Defendants' games of chance in the hopes of winning enough Sweeps Coins to redeem them for valuable prizes, like cash, gift cards, or cryptocurrency (including Bitcoin), *inter alia*.

29.     In short, what begins as a straightforward "pay to play" social casino quickly morphs into an illicit gambling site, where users are paying real money to play games of chance in the hopes of winning an arbitrary financial windfall. The sale of Gold Coins is simply a teaser, a pretext enticing users to win Sweeps Coins, in what amounts to an unlawful, unauthorized casino—the exact type of illicit gambling operation prohibited by state and federal law.

30.     By awarding sweepstakes tokens that have real value, the VGW Defendants' websites and apps—deceptively marketed to the public as harmless 'social' casinos—are, for all intents and purposes, unlawful Internet casinos operating throughout New York and elsewhere,

without any authorization to do so. The only difference between the virtual casinos owned and operated by the VGW Defendants, and the websites owned and operated by traditional brick-and-mortar casinos, is that the latter are licensed businesses, heavily regulated to ensure that they pay when the player wins and the house loses. The VGW Defendants are not licensed, not regulated, and as the Plaintiff and other class members have come to learn time and time again, the VGW Defendants only pay as, when, and if they choose to do so.

31.     Notably, while marketing themselves as 'social casinos' for fun and entertainment, the VGW Defendants go so far as to make false representations about enforcing self-exclusion policies to protect users against gambling addiction. But because these VGW Defendants are not licensed casinos, and are not beholden to any casino regulator—like the New York State Gaming Commission—there is no way to ensure that they will honor any self-exclusion request from an addicted user, or otherwise enforce any of their purported 'self-exclusion' policies. In fact, they rarely do so.

## II.  Chumba Casino, LuckyLand Slots and Global Poker

32.     The VGW Defendants own and operate Chumba Casino, LuckyLand Slots and Global Poker, with affiliated apps available through both APPLE's App Store and GOOGLE's Play Store. Chumba Casino and LuckyLand Slots offer traditional games of chance like blackjack and roulette, along with a plethora of digital slot machines, while Global Poker offers Texas Hold 'Em, Omaha, and other forms of poker, including tournament play and online championships. The user interface on all three sites is largely identical to the games of chance that may be found in traditional brick-and-mortar casinos (*figs. 1-3*):



**fig. 1**



**fig. 2**



**fig. 3**

33.     Just like in a real casino, the outcome of VGW's games of chance are purportedly determined at random. Once a user enters a wager on a particular game (*e.g.*, blackjack or slots), the website or app being used displays a result determined by algorithmic code (known as a "random number generator") in VGW's software. The odds of winning are thus determined by an algorithm devised by VGW, and exclusively under their control.

### III.  How the VGW Defendants Camouflage their Illegal Gambling Racket

34.     The VGW Defendants camouflage their illegal gambling operations by promoting a two-tiered system of virtual currency used to play their games. To play the games of chance offered by Chumba Casino, LuckyLand Slots and Global Poker, users like the Plaintiffs choose between wagering the Defendants' 'Gold Coins'—utility tokens that, by themselves, have no value outside the virtual casino—or their 'Sweeps Coins', which may in fact be redeemed for real value.

35.     When users like the Plaintiff first sign up, they are awarded an initial allotment of free Gold Coins and a smaller number of Sweeps Coins. Users also receive a daily bonus of Gold Coins and Sweeps Coins, which they soon discover they can "redeem for real prizes", incentivizing

them to play VGW's games every day (*figs. 4-5*, where 'GC' refers to Gold Coins and 'SC' refers to Sweeps Coins):



**fig. 4**



**fig. 5**

36.     Despite endless assurances, repeated *ad nauseum* throughout their websites, that their games of chance are always "free to play", the VGW Defendants offer multiple options to purchase Gold Coins, with Sweeps Coins thrown in as a bonus (*figs. 6-8*):



**fig. 6**



**fig. 7**



**fig. 8**

37.     The VGW Defendants offer a variety of payment options to exchange dollars for Gold Coins, including, but not limited to, debit cards, credit cards, bank transfers, gift cards and digital wallet transactions. VGW also accepts payment through various proprietary payments systems, including Google Pay, the payment system owned and operated by GOOGLE's subsidiary, Defendant GOOGLE PAYMENT CORP.

38.     Users typically lose their initial allotment of Gold Coins soon after they begin playing.  As with a traditional brick-and-mortar casino, the longer a user plays, the more likely they will "bust" and run out of the Gold Coins needed to continue playing—but unlike a properly licensed casino, the VGW Defendants are not subject to any regulatory oversight as to the odds of winning.

39.     After their initial bankroll of Gold Coins is gone, users can replenish their account by either cashing in a Sweeps Coin, or by purchasing additional Gold Coins in the hope of eventually redeeming their allotment of Sweeps Coins for real value

40.     VGW's websites allow the user to choose to play either in standard mode or standard play using their Gold Coins, or in a "promotional mode" or "promotional play" using their

Sweeps Coins.  An example of the toggle button between the two modes of play in Chumba Casino appears below, where "GC" to the player's remaining amount of Gold Coins and "SC" refers to remaining Sweeps Coins (*fig. 9*):



**fig. 9**

41.    Ultimately, Plaintiff and other users of VGW's websites and apps (available through both APPLE's App Store and GOOGLE's Play Store) have been lured to wager Gold Coins they've purchased from the VGW Defendants in the hopes of earning Sweeps Coins that can be redeemed for value.  Playing games of chance on VGW's websites, or by downloading VGW's apps to a personal electronic device like a cell phone or tablet, satisfies New York's statutory definition of "gambling" and renders the device a "gambling device" as those terms are defined at N.Y. Penal Law §§ 225.00(2) and (7), respectively.

### IV.  The VGW Defendants' False Marketing

42.    Incredibly, the homepage of each VGW website includes a link to a page describing their "Responsible Social Gameplay Policy" on their ostensibly free websites, explaining their self-exclusion policies, offering advice on how to spot problem gambling, and offering referrals to support organizations.  VGW's "Responsible Social Gameplay Policy" amounts to an admission that they offer illegal gambling, belying every representation they make about their games being "free to play."

43.    The VGW Defendants also use a network of paid influencers and misleading customer testimonials on YouTube and elsewhere brazenly promoting the idea that users can win real money by playing their games and winning Sweeps Coins. YouTube is an online video

platform owned and operated by Defendant GOOGLE.

  44. Advertisements on their websites and all over YouTube include Internet influencers holding over-sized checks to emphasize that users can win big money playing games of chance on High 5 Casino (*figs. 10-11*):



**fig. 10**



**fig. 11**

45.    VGW's not-so-subtle marketing campaigns, widely broadcasting the potential of winning real money on their websites and apps, amount to an astounding admission:  The VGW Defendants and similar sweepstakes casino websites are carrying on an illicit gambling enterprise, with the full cooperation of the App Defendants, in violation of state and federal law against unlawful interstate gambling.

46.    Nevertheless, the VGW Defendants knowingly, willfully, and prominently advertise the falsehood that their sites are operating legally in New York and throughout the United States, a claim abetted by the App Defendants, who facilitate the distribution and promotion of VGW's illicit gambling enterprise.

**V.  The VGW Defendants' False Promises About Redeeming Sweeps Coins**

47.    Although VGW and its subsidiaries promise that Sweeps Coins won on Chumba, LuckyLand or Global Poker are redeemable for cash and other valuable prizes, Plaintiffs and the other members of the class have discovered, albeit too late, that they're the victims of a classic "bait and switch".

48.    Internet chat forums like Reddit are rife with tales similar to those of Plaintiffs LAMAR PRATER and REBECCA PRATT:  *the VGW Defendants rarely, if ever, redeem any of the Sweeps Coins for the value promised.*

49.    The VGW Defendants frequently invent arbitrary, and largely contrived, reasons to reject player requests to redeem their Sweeps Coins for money or other value. The tactics used by VGW to prevent users from redeeming their Sweeps Coins reveal that VGW and its subsidiaries are not just running illegal, unlicensed casinos—they are also operating a patent fraud.

50.    Because the VGW Defendants are operating real casino gambling operations, while not beholden to any of the regulators who oversee the operations of traditional casinos, there is no way to ensure that the VGW Defendants honor any of their promises.

## VI.  Losses to the Plaintiff Class Amount to Hundreds of Millions of Dollars

51.    The VGW Defendants' illegal gambling operations have been extremely lucrative for them, while driving many victims of their scheme to financial ruin. For example, the audited financial statements of VGW Holdings demonstrate that the company made over $500m Australian Dollars in 2023 and over $600m Australian Dollars in 2022—totaling well over $700m USD at recent currency exchange rates (*fig. 12*,  where all numbers are in thousands of Australian Dollars):

**VGW HOLDINGS LIMITED AND CONTROLLED ENTITIES**
**Consolidated Statement of Profit or Loss and Other Comprehensive**
**Income for the year ended 30 June 2023**

| From continuing operations | Note | 2023 $'000 | 2022 $'000 |
|---|---|---|---|
| Revenue from contracts with customers | 4 | 4,835,148 | 3,457,148 |
| Sweepstakes prizes | | (3,355,545) | (2,288,975) |
| Merchant and affiliate fee | | (248,902) | (161,462) |
| Finance income | 5 | 5,753 | 89 |
| Finance costs | 5 | (10,849) | (1,479) |
| Foreign currency (loss)/gain | 5 | (22,654) | 10,464 |
| Other income | 5 | 217 | 9 |
| Marketing and advertising fees | 5 | (359,987) | (235,259) |
| Legal and professional fees | | (65,384) | (33,102) |
| Employee benefits expense | 6 | (116,862) | (80,408) |
| Share-based payments expense | | (24,397) | (8,171) |
| Depreciation and amortisation expense | | (6,927) | (5,977) |
| Technology and other communication expense | | (47,984) | (31,105) |
| Property and occupancy expense | | (2,281) | (1,589) |
| Sponsorship, general and administration expense | | (33,198) | (16,079) |
| | | (4,289,000) | (2,853,044) |
| **Profit before income tax** | | 546,148 | 604,104 |

**fig. 12**

52.    Upon information and belief, there are over a dozen copycat "sweepstakes" casino websites, suggesting that the losses suffered by the proposed class run into the hundreds of millions of dollars—and a substantial portion of those losses have accrued to New York residents, like the Plaintiffs and other members of the proposed class.

53.    Upon information and belief, the VGW Defendants maintain detailed records of every individual player's identity, individualized data about their purchase history, their redemption history, and every single wager they've made. The VGW Defendants therefore maintain sufficient records to calculate and reveal the losses sustained by Plaintiffs LAMAR PRATER, REBECCA PRATT and other members of the proposed class.

**VII.  The Role of the App Defendants**

54.    The promotion and distribution of VGW's apps through GOOGLE's Play Store and

APPLE's App Store to users of Android and iOS devices, respectively, is crucial to the furtherance of the Defendants' illicit, interstate gambling scheme.

55.     GOOGLE and APPLE maintain near-absolute control over their respective application platforms. Upon information and belief, the App Defendants each take up to 30% of all revenues generated by app sales through the Play Store and the App Store, including in-app purchases made by a consumer after initially downloading the app. Thousands of software developers make apps for Android devices and iOS devices available for download exclusively through GOOGLE's Play Store and APPLE's App Store, respectively.

56.     While most of the apps developed by the VGW Defendants are free to download, their unsuspecting victims are lured to make in-app purchases of Gold Coins and the like within the app itself, typically using either a credit or debit card. In addition to the revenues described in the foregoing ¶54, the App Defendants take up to 30% of any in-app purchases consumers make after initially downloading the app.

57.     Moreover, Defendant GOOGLE has compounded their participation in the VGW Defendants' illicit enterprise by offering consumers the option to pay using their proprietary payment processing services, Google Pay. Upon information and belief, Defendants GOOGLE and/or GOOGLE PAYMENT CORP. take a substantial commission for each package of Gold Coins purchased using Google Pay.

58.     The App Defendants are under a contractual obligation to remit the balance (70%) of the user's payment for apps and in-app purchases to the developers of the software, *viz.*, the VGW Defendants. However, payments made by Plaintiffs and others to the VGW Defendants using a proprietary payment system like Google Pay are remitted directly to GOOGLE.

59.     The App Defendants are thus directly profiting from the VGW Defendants' illegal

interstate gambling enterprise. Plaintiffs seek to enjoin the App Defendants from further participating in, promoting, or facilitating the VGW Defendants' unlawful interstate gambling enterprise.

60.     The App Defendants' control over their respective platforms means they can decide which apps are available for download to users of Android and iOS devices. Despite numerous complaints from users and others that have long ago put GOOGLE and APPLE on notice that the VGW Defendants are operating as unlicensed, illegal casinos throughout the country, they have failed to exclude the VGW Defendants from their application platforms, or otherwise do anything to restrict access to VGW's software, but are instead knowingly and willfully facilitating its distribution while profiting thereby.

61.     In other words, despite knowing that the VGW Defendants' websites and apps are illegal, the App Defendants continue to maintain a sizable (30%) financial interest by hosting their apps on GOOGLE's App Store and APPLE's Play Store; by using search algorithms to drive customers to the VGW Defendants apps and websites; and, in the case of GOOGLE, by processing payments on behalf of the VGW Defendants.

62.     As such, the App Defendants, along with the VGW Defendants, are all liable as co-conspirators to an illegal gambling enterprise. Moreover, the VGW Defendants named herein, are just several of more than a dozen sweepstakes casinos[1] that the App Defendants illegally host on their application platforms, *viz.*, the App Store (APPLE) and Play Store (GOOGLE), and thereby distribute to unwitting consumers.

63.     The App Defendants, for their part, directly participate in an informal association

---

[1] Others include High 5 Casino, CrownCoins Casino, Wow Vegas, McLuck.com, Stake.us, Pulsz Casino, Chanced Casino, Funrize Casino, Hello Millions Casino, Punt Casino, Fortune Coins Casino, Zula Casino, Moonspin Casino, Jackpota Casino, Scrooge Casino, and more.  This is by no means an exhaustive list.

and enterprise of individuals and entities with the explicit purpose of knowingly devising and operating an online gambling scheme to exploit consumers and reap hundreds of millions of dollars in profits (the "Sweepstakes Casino Enterprise").

64.    This ongoing Enterprise necessarily promotes the success of each of its members: The VGW Defendants need the App Defendants to access consumers, distribute their illegal gambling software, and process payments. The App Defendants, for their part, need developers like VGW to publish and market the misleading and pernicious software applications on their App Store (APPLE) and Play Store (GOOGLE) to distribute the illegal gambling software to generate massive revenue streams for all parties to the Enterprise.

65.    By means of this action, Plaintiffs and the proposed class members seek to force the App Defendants to stop participating in the Sweepstakes Casino Enterprise, and to return to consumers the money it has illegally obtained therefrom.

66.    Plaintiffs, on behalf of themselves and the proposed class members, bring claims for damages and for injunctive relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and N.Y. Gen. Bus. Law § 349.

## **FACTS SPECIFIC TO PLAINTIFF LAMAR PRATER**

67.    Plaintiff LAMAR PRATER is a natural person and citizen of New York who resides in Schenectady County, New York at all times relevant to this Complaint.

68.    Between May 2024 and July 2024, Plaintiff registered with and used the following social 'sweepstakes' casino websites: LuckyLand Slots (*available at* https://luckylandslots.com, a casino website owned and operated by Defendant VGW LUCKYLAND INC., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins as outlined in ¶¶'s 26-50, *supra*.

69.     Plaintiff downloaded the apps owned and operated by VGW LUCKYLAND to his iPhone from APPLE's App Store. Plaintiff purchased Gold Coins from Defendant VGW LUCKYLAND which he then wagered on his iPhone for the chance to earn Sweeps Coins, which Defendant VGW LUCKYLAND represented to him and others as redeemable for value.

70.     Plaintiff is authorized to bring this action because Plaintiff was damaged by the illegal gambling enterprise conducted by the VGW Defendants in conjunction with the App Defendants. Most, if not all, of Plaintiff LAMAR PRATER's losses were sustained by playing the games of chance operated by the VGW Defendants as described above and distributed and made available to him with the knowing assistance of one or more of the App Defendants.

71.     During the relevant period described in ¶68, Plaintiff lost well over $1,000 playing the unlawful games of chance promoted and operated by the VGW Defendants named therein, whose scheme is substantially identical to that described in ¶¶24-50 *supra* and who were materially assisted by the App Defendants as described in ¶¶54-59, *supra*.

## FACTS SPECIFIC TO PLAINTIFF REBECCA PRATT

72.     Plaintiff REBECCA PRATT is a natural person and citizen of New York who resides in Chautauqua County, New York at all times relevant to this Complaint.

73.     Between June 2024 and August 2024, Plaintiff registered with and used the following social 'sweepstakes' casino website: Chumba Casino (*available at* https://www.chumbacasino.com), a casino website owned and operated by Defendant VGW MALTA LTD., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins as outlined at ¶'s 24-50, *supra*.

74.     Plaintiff downloaded the apps owned and operated by VGW MALTA to her Android phone from GOOGLE's Play Store. Plaintiff purchased Gold Coins from Defendant VGW

MALTA using Google Pay (owned and operated by Defendant GOOGLE PAYMENT CORP.) which she then wagered on her Android-based phone for the chance to earn Sweeps Coins, which Defendant VGW MALTA misrepresented to her and others as redeemable for value.

75.    Plaintiff is authorized to bring this action because Plaintiff was damaged by the illegal gambling enterprise conducted by the VGW Defendants in conjunction with the App Defendants. Most, if not all, of Plaintiff REBECCA PRATT's losses were sustained by playing the games of chance operated by the VGW Defendants as described in ¶61 and distributed and made available to him with the knowing assistance of one or more of the App Defendants.

76.    During the relevant period described in ¶73, Plaintiff lost over $1,000 playing the unlawful games of chance promoted and operated by the VGW Defendants named therein, whose scheme is substantially identical to that described in ¶¶25-50 *supra* and who were materially assisted by the App Defendants as described in ¶¶54-64, *supra*.

## CLASS ALLEGATIONS

77.    **Class Definition:**  Plaintiffs LAMAR PRATER and REBECCA PRATT bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All persons in the State of New York who purchased and lost money by wagering in any online sweepstakes casino owned and operated by the VGW Defendants with the assistance and participation of one or more of the App Defendants.

78.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, and any entity in which the Defendants or its parents have a controlling interests and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) Plaintiffs' counsel and

Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

79.    **Numerosity:** Upon information and belief, tens of thousands of New York residents fall into the definition of the Class.  Members of the Class can be identified through Defendants' records, discovery, and other third-party sources.

80.    **Commonality and Predominance:** There are many questions of law and fact common to Plaintiffs and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not necessarily limited to, the following:

a.    Whether the games offered by the VGW Defendants are "gambling" as defined at N.Y. Penal Law § 225.00(2);

b.    Whether downloading an app developed by the VGW Defendants from a platform controlled by the App Defendants to a cell phone, tablet or other personal electronic device renders it a "gambling device" as defined at N.Y. Penal Law § 225.00(7);

c.    Whether Plaintiffs and each member of the Class lost money or anything of value by playing the games of chance developed by the VGW Defendants and promoted by the App Defendants;

d.    Whether Defendants violated N.Y. Gen. Bus. Law § 349;

e.    Whether Defendants have violated the federal RICO Act, 18 U.S.C. § 1962(c);

f.    Whether the Defendants have been unjustly enriched by their misconduct;

g.    Alternatively, whether the VGW Defendants have breached their implied covenants of good faith and fair dealing with a class of consumers;

h.    Alternatively, whether the VGW Defendants are liable to the Plaintiffs for common

law fraud.

81.    **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class in that Plaintiffs and the other members of the Class sustained damages arising from the wrongdoing of the Defendants.

82.    **Adequate Representation:**    Plaintiffs will fairly and adequately protect the interests of the Class, which is estimated to consist of numerous New York citizens. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class, as Plaintiffs and each member of the Class have lost money playing the games of chance provided by the VGW Defendants through an app or apps made available to them on the App Store or Play Store controlled by Defendants APPLE and GOOGLE, respectively. Plaintiffs and their counsel intend to vigorously prosecute the action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are antagonistic to those of the Class, and Defendants have no defenses unique to the named Plaintiffs.

83.    **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole.  Defendants' misconduct and malfeasance that Plaintiffs challenge apply to and affect members of the Class uniformly, and Plaintiffs' challenge of Defendants' misconduct and malfeasance applies to Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs. The factual and legal bases of the Defendants' liability to Plaintiffs and to the other members of the Class are the same.

84.    **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendants' wrongful conduct. Absent a class action, it would be difficult if not impossible for the individual members of the Class to obtain effective relief from Defendants. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Class certification in this matter will foster economies of time, effort, and expense, and will ensure uniformity of decisions and avoid the danger of inconsistent or contradictory judgments arising from the same or substantially similar sets of facts.

85.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

## FIRST CAUSE OF ACTION
### Violations of N.Y. Gen. Oblig. Law § 5-421
### (On behalf of Plaintiffs and the Class)

86.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

87.    Plaintiffs, members of the Class, and Defendants are all "persons" as defined by N.Y. Gen. Oblig. Law § 5-421.

88.    New York's gaming loss recovery statute, N.Y. Gen. Oblig. Law § 5-421, provides

as follows:

> Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof.

89.    N.Y. Gen. Oblig. Law § 5-401 prohibits "all wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever….".

90.    *Gambling* is separately defined at N.Y. Penal Law § 225.00(2): "A person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."

91.    § 225.00(6) defines "something of value" as "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

92.    The "Gold Coins" and "Sweeps Coins" sold by the VGW Defendants, however denoted by the specific app or website at issue, are "something of value" under N.Y. Gen. Oblig. Law § 225.00(6) because they are "any token, object or article" sold for use at the VGW Defendants' online casinos in exchange for real money or property or "any interest therein."

93.    The apps and websites owned and operated by the VGW Defendants are illegal gambling operations under New York law because they are games at which players wager something of value (virtual Gold Coins or similar, bought and paid for with real money) and by an element of chance (*e.g.*, spinning an online slot machine) are able to obtain Sweeps Coins which

can ostensibly be redeemed for real value, such as cash, gift cards, cryptocurrency and other prizes, as well as additional entertainment (for extended gameplay).

94.    The VGW Defendants are the proprietors for whose benefit the online gambling games are played because Defendant VGW MALTA LTD. operates Chumba Casino and/or knowingly derives profits therefrom; Defendant VGW LUCKYLAND INC. operates LuckyLand Slots and/or knowingly profits therefrom; and Defendant VGW GP LTD. operates Global Poker and/or knowingly derives profits therefrom.

95.    As such, Plaintiffs and the Class were lured to an illegal, unlicensed gambling enterprise when they purchased Gold Coins to wager at the casino websites and apps owned and operated by the VGW Defendants.  Plaintiffs and each member of the Class staked money, in the form of Gold Coins and similar utility tokens purchased with actual US currency, to play Defendants' games of chance (*e.g.*, slot machines, blackjack, roulette, etc.) for the chance to win additional things or value (*i.e.*, the opportunity to win Sweeps Coins and similarly denominated sweepstakes tokens, redeemable for cash and other valuable prizes, without additional charge).

96.    The Sweeps Coins that Plaintiffs and the Class sought to win by playing the games of chance offered by the VGW Defendants are "thing[s] of value" under New York law because they can be redeemed for cash, gift cards, cryptocurrency and other valuable prizes.

97.    The casino games offered by the VGW Defendants each meet the definition of a "[c]ontest of chance," as defined by N.Y. Gen. Oblig. Law § 225.00(1), because they are "any contest, game, gaming scheme or gaming devise in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." The VGW Defendants' games are ostensibly programmed to have outcomes that are determined entirely by chance, using algorithms designed to generate random numbers, so that a

contestant's skill does not affect the outcome.

98.    As a direct and proximate result of the VGW Defendants' operation of their illegal gambling websites and apps, Plaintiffs and each member of the Class have lost money wagering at Defendants' games of chance.  Plaintiffs, on behalf of themselves and the Class, seek an order: (1) requiring the VGW Defendants to cease the operation of their gambling apps and websites; (2) requiring the App Defendants to cease the distribution of the VGW Defendants' unlawful gambling apps and websites;  and (3) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

**SECOND CAUSE OF ACTION**
**Violations of N.Y. Gen. Bus. Law § 349**
**(On behalf of Plaintiffs and the Class)**

99.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

100.    Gen. Bus. Law § 349 protects both consumers and competitors by promoting fair business practices in commercial markets for goods and services.

101.    To achieve that goal, § 349(a) prohibits any person from using "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . .".

102.    N.Y. Gen. Bus. Law § 349(h) states that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

103.     Plaintiffs have suffered an injury-in-fact and have lost money or property as a result of the unlawful conduct by the VGW Defendants and the App Defendants.

104.     Defendants have violated N.Y. Gen. Bus. Law § 349 because the casino games owned and operated by the VGW Defendants and distributed with the knowing, willful participation by the App Defendants, constitute illegal gambling as defined at N.Y. Penal Law § 225.00(2) and as more fully explained above.

105.     Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in the operation of making computer games and other software applications available to the public.

106.     Defendants' acts and practices were and are injurious to the public interest because Defendants, in the course of their business, continuously advertised to and solicited the general public in New York and throughout the United States to play the unlawful games of chance owned and operated by the VGW Defendants. This was part of a pattern or generalized course of conduct on the part of the Defendants, and many consumers have been adversely affected by Defendants' conduct acting in concert, and the public is at risk.

107.     The Defendants have profited immensely from the widespread distribution of the unlawful games of chance owned and operated by the VGW Defendants, amassing hundreds of millions of dollars from the losers of their games of chance.

108.     As a result of Defendants' conduct, Plaintiffs and the Class members were injured in their business or property—*i.e.*, economic injury—in that they lost money wagering on Defendants' unlawful games of chance.

109.     Defendants' unfair or deceptive conduct proximately caused Plaintiffs and the Class members to suffer injury because, but for the challenged conduct, Plaintiffs and the Class members

would not have lost money wagering at or on the VGW Defendants' unlawful games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

110.   Plaintiffs, on their own behalf and on behalf of the Class, seek to enjoin further violation of the law and to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**18 U.S.C. § 1962(c) (RICO)**
**Racketeering Activities and Collection of Unlawful Debts**
**(Damages and Injunctive Relief)**

111.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

112.   At all times relevant, each of the App Defendants (APPLE, GOOGLE and GOOGLE PAYMENT CORP.) and each of the VGW Defendants (VGW HOLDINGS, VGW MALTA, VGW LUCKYLAND and VGW GP) is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because each is capable of holding, and does hold, "a legal or beneficial interest in property."

113.   Plaintiffs are each a "person," as that term is defined in 18 U.S.C. § 1961(3), and have standing to sue, as they were injured in their business and/or property as a result of the Defendants' wrongful conduct described herein, including, but not limited to, the VGW Defendants and the App Defendants (1) having unlawfully taken and received money from Plaintiffs and the proposed class; (2) having never provided Plaintiffs and members of the class a fair and objective chance to win—they could only lose by playing the games of chance owned and operated by the VGW Defendants; and (3) having directly and knowingly profited from, on information and belief, rigged and manipulated digital slot machines, roulette wheels and other games of chance.

114.    § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

115.    18 U.S.C. § 1961(1) defines "racketeering activity" to include (i) "any act ... involving ... gambling ... which is chargeable under State law and punishable by imprisonment for more than one year;" (ii) any act which is indictable under Title 18, § 1084 of the U.S. Code (relating to the transmission of gambling information); and (iii) any act which is indictable under Title 18, § 1955 of the U.S. Code (relating to the prohibition of illegal gambling businesses).

116.    Because promoting gambling in the first degree as defined at N.Y. Penal Law § 225.10 is a class E felony, potentially indictable under New York law and punishable by imprisonment for up to four (4) years *per* N.Y. Penal Law § 70.00, and further because illegal gambling is indictable under both § 1084 and § 1955 of Title 18 of the U.S. Code, the Sweepstakes Casino Enterprise is engaged in "racketeering activity."

117.    18 U.S.C. § 1961(6) defines "unlawful debt" as a debt "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof," and "(B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof."

118.    Because the Sweepstakes Casino Enterprise collects debts incurred from a gambling activity in violation of New York law, described herein, its profits derived from its ownership and maintenance constitute "unlawful debt" as defined in Section 1961(6).

119.    The App Defendants violated 18 U.S.C. § 1962(c) and § 1962(d) by participating in, facilitating, or conducting the affairs of the Sweepstakes Casino Enterprise through a pattern of

racketeering activity composed of indictable offenses under N.Y. Penal Law § 225.10.

120. The affiliation between the App Defendants and the VGW Defendants constitutes a conspiracy to use an enterprise for the collection of unlawful debt in violation of 18 U.S.C. § 1962(d).

## I. The Sweepstakes Casino Enterprise

121. RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

122. Under 18 U.S.C. § 1961(4) a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See, e.g., Boyle v. United States*, 556 U.S. 938, 946 (2009).

123. The Sweepstakes Casino Enterprise is an association-in-fact composed of the App Defendants (*viz.*, APPLE, GOOGLE, GOOGLE PAYMENT CORP.) and the VGW Defendants (*viz.*, VGW HOLDINGS and its subsidiaries, VGW MALTA, VGW LUCKYLAND, and VGW GP) who are engaged in and whose activities affect interstate commerce, and which has affected and damaged interstate commercial activity. This Enterprise exists separately from the otherwise legitimate businesses operations of each individual participant.

124. The pattern of racketeering activity conducted by the members of the Sweepstakes Casino Enterprise is distinct from the Sweepstakes Casino Enterprise itself, as each act of racketeering is a separate offense committed by an entity while the Sweepstakes Casino Enterprise itself is an association-in-fact of legal entities. The Sweepstakes Casino Enterprise has an informal structure of app developers and platforms with continuing functions or responsibilities.

125.    For nearly a decade, the members of the Sweepstakes Casino Enterprise have collaborated together to target and retain high-spending users in their online gambling scheme throughout the country.  The App Defendants, upon information and belief, have mutually agreed to continue their Enterprise through their ongoing collection of unlawful debts, functioning as a cohesive unit with the purpose of gaining illicit gambling profits.

**II. The Structure of the Sweepstakes Casino Enterprise**

126.    The Sweepstakes Casino Enterprise consists of the VGW Defendants and the App Defendants. Each participant agreed to conduct and carry out the affairs and goals of the Sweepstakes Casino Enterprise:

a.    The VGW Defendants agreed to conduct the affairs of the Sweepstakes Casino Enterprise by developing, updating and operating illegal slot machines and other unlawful games of chance: the "gambling devices."  The VGW Defendants operate as the principals, forming the necessary business partnerships with the App Defendants for the successful execution of their unlawful gambling scheme. The VGW Defendants fundamentally rely on software application platforms provided by the App Defendants to host their games, access consumers, and collect revenue. Upon constructive notice of the unlawful nature of the VGW Defendants' illegal gambling websites and apps, the App Defendants agreed with all Enterprise participants to uphold their roles in the Sweepstakes Casino Enterprise, and to continue functioning as a single unit with the common purpose of facilitating the VGW Defendants' unlawful scheme by distributing their software and collecting unlawful debts from online gambling activity.

b.    The App Defendants agreed to conduct the affairs of the Sweepstakes Casino Enterprise by hosting the virtual social gambling applications, distributing the apps to consumer personal electronic devices and processing in-app transactions in exchange for a share in the

gamblers' losses. Additionally, upon notice of the unlawful nature of the virtual social gambling applications, the App Defendants agreed with all participants to uphold their roles in the Sweepstakes Casino Enterprise, and to continue functioning as a single unit with the common purpose of facilitating the VGW Defendants' unlawful scheme, *e.g.*, by distributing their software and collecting unlawful debts from online gambling activity.

127.    At all relevant times, each Sweepstakes Casino Enterprise participant was aware of the conduct of the Sweepstakes Casino Enterprise, was a knowing and willing participant in that conduct, and reaped profits from that conduct through the distribution of the VGW Defendants software and through in-app sales.

128.    The persons engaged in the Sweepstakes Casino Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities.

129.    All members of the Sweepstakes Casino Enterprise coordinate and maintain their respective roles in order to enrich themselves and to further the common interests of the whole.

130.    Each Sweepstakes Casino Enterprise participant participated in the operation and management of the Sweepstakes Casino Enterprise by directing its affairs, as described herein.

131.    The wrongful conduct of the Sweepstakes Casino Enterprise has been and remains part of the Sweepstakes Casino Enterprise's ongoing way of doing business and constitutes a continuing threat to the Plaintiffs' and the Class's property. Without the repeated illegal acts and intentional coordination between all participants, the Sweepstakes Casino Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiffs and the other members of the proposed class into the future.

### III. Pattern of Racketeering Activity

132.    The affairs of the Sweepstakes Casino Enterprise were conducted in such a way as

to form a pattern of racketeering activity. The Sweepstakes Casino Enterprise's general pattern of activity consists of designing and operating illegal, online slot machines and other games of chance and repeatedly violating public policy against gambling by:

    a.   Developing illegal slot machines and other games of chance and disguising them as innocuous video game entertainment;

    b.   Distributing and operating illegal slot machines and other games of chance that are, upon information and belief, rigged and manipulated;

    c.   Concealing the scope and deceptive nature of their gambling applications despite knowledge of their predatory design and business model;

    d.   Providing a host platform to house unlicensed gambling activity;

    e.   Injuring the public interest by continuously advertising to and soliciting the general public to play illegal slot machines and other games of chance;

    f.   Conspiring to uphold the Sweepstakes Casino Enterprise; and

    g.   Unjustly collecting unlawful debts and retaining the profits from their illegal gambling apps and websites.

    133.   The Sweepstakes Casino Enterprise has operated as a continuous unit since at least 2018.

    134.   Pursuant to and in furtherance of their fraudulent scheme, the App Defendants committed multiple predicate act violations of New York law as previously alleged herein, including violations of N.Y. Penal Law 250.10, *inter alia.*

**<u>FOURTH CAUSE OF ACTION</u>**
**RICO § 1962(d)**
**Conspiracy to Engage in Racketeering Activities**
**and Collection of Unlawful Debts**
**(Damages and Injunctive Relief)**

135.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

136.     18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

137.     As described throughout, and as described in detail in Plaintiffs' *Third Cause of Action* above, even if they did not direct or manage the affairs of the Sweepstakes Casino Enterprise, the App Defendants conspired to commit predicate acts in violation of § 1962(c), including violations of N.Y. Penal Law § 225.10, *inter alia.*

138.     The App Defendants (APPLE, GOOGLE and GOOGLE PAYMENTS CORP.) at all times acted knowingly, and willfully, when agreeing to conduct the activities of the Sweepstakes Casino Enterprise.  The App Defendants agreed to and indeed did participate in the requisite pattern of racketeering activity which constitutes this RICO claim, collected unlawful debts, engaged in racketeering activities, and intentionally acted in furtherance of the conspiracy by conducting the pattern of racketeering and unlawful debt collection as described above.

139.     At the very latest, the App Defendants had notice of the illegality of the Sweepstakes Casino Enterprise as of 2019. Their continuing participation in the Sweepstakes Casino Enterprise after that date demonstrates their commitment to upholding and operating the structure of the Sweepstakes Casino Enterprise.

140.     As a result of the App Defendants' conduct, Plaintiffs and other members of the Class were deprived of money and property that they would not otherwise have lost.

141.     Under 18 U.S.C. § 1964(c), the Class is entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

Plaintiffs LAMAR PRATER and REBECCA PRATT, individually and on behalf of all others similarly situated, respectfully request that this Court enter an Order:

    a.  Certifying this case as a class action on behalf of the proposed class defined at ¶77, *supra*; appointing Plaintiffs as representative of the proposed class, and appointing their counsel as class counsel;

    b.  Declaring that Defendants' conduct, as set out above, is unlawful under N.Y. Gen. Bus. Law § 349;

    c.  Declaring that Defendants' conduct, as set out above, constitutes racketeering activities, collection of unlawful debts, and conspiracy to engage in the same;

    d.  Entering judgment against Defendants jointly and severally in the amount of the losses suffered by Plaintiffs and the members of the class;

    e.  Enjoining Defendants from continuing the challenged conduct;

    f.  Awarding damages to Plaintiffs and the Class members in an amount to be determined at trial, including trebling as appropriate;

    g.  Awarding restitution to Plaintiffs and the members of the proposed class in an amount to be determined at trial;

    h.  Requiring disgorgement of all of Defendants' ill-gotten gains;

    i.  Awarding reasonable attorneys' fees and expenses;

    j.  Awarding pre- and post- judgment interest, to the extent allowable by law;

    k.  Requiring injunctive and/or declaratory relief as necessary to protect the interests of Plaintiffs and the proposed class; and

    l.  Awarding such other and further relief as equity and justice require, including

all forms of relief provided for under N.Y. Gen. Oblig. Law § 5-421, N.Y.

Gen. Bus. Law § 349 and the federal RICO statute or, in the alternative, as

provided for by common law.

## JURY TRIAL DEMANDED

Plaintiffs request a trial by jury of all claims that can be so tried.

## DESIGNATION OF TRIAL COUNSEL

Justin A. Meyers, Esq., is designated as trial counsel for Plaintiffs.


Dated: Dec. 3, 2024                    By: /s/    Justin Meyers
                                           Justin A. Meyers, Esq.

                                       LAW OFFICES OF G. MARTIN MEYERS, P.C.
                                       *Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO RULE 5.2(a)

I hereby certify that confidential personal identifiers have been redacted from documents

now submitted to the court, and will be redacted from all documents submitted in the future in

accordance with Fed. R. Civ. P. 5.2(a).


Dated: Dec. 3, 2024                    By: /s/    Justin Meyers
                                           Justin A. Meyers, Esq.

                                       LAW OFFICES OF G. MARTIN MEYERS, P.C.
                                       *Attorneys for Plaintiffs*